**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3388
_____

IVELIZ MORALES, on behalf of herself and all others similarly situated,
Appellant
v.

COMMONWEALTH FINANCIAL SYSTEMS, INC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-22-cv-01319)
District Judge:  Honorable Evelyn Padin
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 14, 2023
_____

Before:  CHAGARES, Chief Judge, MATEY and FUENTES, Circuit Judges.

(Opinion filed: November 22, 2023)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Iveliz Morales filed a lawsuit against Commonwealth Financial Systems, Inc. ("Commonwealth") alleging that Commonwealth violated the Fair Debt Collection Practices Act ("FDCPA") by sending her a false, deceptive, or misleading debt collection letter. The District Court granted Commonwealth's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), finding that the language in Commonwealth's letter does not run afoul of the FDCPA. Morales appealed.

While Morales's appeal was pending, this Court published its recent decision Huber v. Simon's Agency, Inc., 84 F.4th 132 (3d Cir. 2023). Without the benefit of Huber's guidance, neither the District Court nor the parties raised concerns about Morales's standing under Article III of the United States Constitution. We hold that Morales lacks standing. Accordingly, we will vacate the District Court's order and remand for the District Court to consider, in its discretion, whether to grant Morales leave to amend or dismiss without prejudice due to lack of jurisdiction.

## I.

Because we write for the parties, we recite only the facts pertinent to our decision. Morales is a New Jersey resident. At some time before September 17, 2021, she incurred a financial obligation to Southern Bank Emergency Physicians, a medical services provider. This debt was later acquired by Pendrick Capital Partners LLC ("Pendrick"). Pendrick then referred Morales's debt to Commonwealth, a debt collector, for collection.

To collect this debt, Commonwealth sent Morales a letter dated September 17, 2021. The letter listed Morales's "account balance" as $100.00 and provided a "discount

2

offer" of $50.00.  Appendix ("App.") 107-08 ¶¶ 31-32; App. 114.  The letter also

contained a time-bar disclosure[1] that discussed the effect of the passage of time on

Morales's debt.  In relevant part, the time-bar disclosure read:

> The law limits how long you can be sued on a debt. Because of the age of your debt, the creditor cannot sue you for it. In many circumstances, you can renew the debt and start the time period for the filing of a lawsuit against you if you take specific actions such as making certain payments on the debt or making a written promise to pay. You should determine the effect of any actions you take with respect to this debt.

App. 108 ¶ 33; App. 114.

Morales filed a putative class action lawsuit on behalf of herself and other

similarly situated New Jersey residents who received Commonwealth's collection letters.

She alleged that Commonwealth violated the FDCPA because its debt collection

letter — specifically the time-bar disclosure — was false, deceptive, or misleading.  See

15 U.S.C. § 1692e (prohibiting debt collectors from making a "false, deceptive, or

misleading representation . . . in connection with the collection of any debt.").[2]  Morales

alleged that the time-bar disclosure is misleading because by writing the "creditor cannot

sue you for [the debt]," Commonwealth failed to inform her that she may, in fact, be sued

on time-barred debt, despite having a complete legal defense to such a suit.  She averred

---

[1] The parties both refer to this language a "time-bar disclosure."  We will use this term when referring to the disputed language.

[2] Morales also alleged that the letter violated 15 U.S.C. § 1692e(2)(A) (prohibiting false representation of the "character, amount, or legal status of a debt"), 1692e(5) (prohibiting a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken"), and 1692e(10) (prohibiting the use of any "false representation or deceptive means to collect or attempt to collect any debt") in addition to section 1692e.

that Commonwealth's language "implies that if [Pendrick] or a successor creditor did file a suit against [Morales], then [Morales] would not need to take any action to preserve her rights." App. 108 ¶ 38 (emphasis added). Further, Morales alleged "[i]f [she] or others similarly situated failed to assert that the obligations were time-barred in response to being sued by [Pendrick], then Pendrick could seek and would likely be awarded judgments." App. 109 ¶ 39 (emphasis added). She also alleged that the time-bar disclosure is misleading because by writing "[i]n many circumstances, you can renew the debt and start the time period for the filing of a lawsuit against you if you take specific actions such as making certain payments on the debt or making a written promise to pay," Commonwealth "falsely represents" the actions required to revive time-barred debt under New Jersey law. App. 108, ¶ 33; App. 109 ¶¶ 40, 41-43.

The District Court granted Commonwealth's motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). It examined numerous district court opinions analyzing substantially similar debt collection letters. Joining this chorus of district courts, it found Commonwealth's letter does not violate the FDCPA. Morales appealed.

While Morales's appeal was pending, this Court issued an opinion concerning plaintiffs' standing under the FDCPA. In Huber, this Court considered whether an FDCPA plaintiff had Article III standing under the informational injury doctrine and traditional standing principles in light of the Supreme Court's recent guidance in TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021). See Huber, 84 F.4th at 144-49.

4

We requested supplemental briefing on whether Morales has Article III standing and how Huber affects this inquiry.

## II.

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and our appellate jurisdiction to review the District Court's decision is authorized by 28 U.S.C. § 1291.

Any questions of this Court's jurisdiction "must be resolved as a threshold matter" by this Court sua sponte despite neither the District Court nor the parties raising Article III standing as an issue below. St. Pierre v. Retrieval-Masters Creditors Bureau, Inc., 898 F.3d 351, 356 (3d Cir. 2018); see also McCauley v. Univ. of the V.I., 618 F.3d 232, 238 (3d Cir. 2010) ("[W]e are required to raise issues of standing *sua sponte* if such issues exist before considering the merits of this appeal . . . .") (citation and quotation marks omitted). Of course, "[w]e have jurisdiction to determine our own jurisdiction." United States v. Kwasnik, 55 F.4th 212, 215 (3d Cir. 2022).

To establish Article III standing, Morales must show she suffered (1) a concrete, particularized, and actual or imminent injury, (2) that was likely caused by the defendant, and (3) would likely be redressable by a favorable judicial decision. TransUnion, 141 S. Ct. at 2203 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). Mere violation of a federal statute does not necessarily constitute a concrete injury. TransUnion, 141 S. Ct. at 2205-07; see also Spokeo, Inc. v. Robins, 578 U.S. 330, 340-42 (2016) (explaining that although Congress may identify legally cognizable harms sufficient to confer standing, some federal statutory violations still may be insufficiently

5

concrete).  Violations of statutory rights may give rise to standing when they engender either "traditional tangible harms, such as physical harms and monetary harms" or "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." TransUnion, 141 S. Ct. at 2204. However, one species of intangible harms — informational injuries — are excepted from the usual requirement of showing a close relationship to traditionally recognized harms. See Huber, 84 F.4th at 145 (citing Kelly v. RealPage, Inc., 47 F.4th 202, 212 n.8 (3d Cir. 2022)).

This Court's recent decision in Huber applied these standing principles to a plaintiff's FDCPA claim.  In Huber, the FDCPA plaintiffs filed a putative class action alleging violations of the same statute at issue here, 15 U.S.C. § 1692e. Id. at 142.  This Court first concluded that the plaintiffs had not suffered an informational injury because they had not identified any information to which they were entitled and failed to receive. Id. at 145-46.  But this Court held that the named plaintiff had standing because she suffered an intangible harm closely related to a traditionally recognized harm. Id. at 149-150.  We held that violations of § 1692e for the use of a "false, deceptive, or misleading representation or means in connection with the collection of any debt" are closely analogous to the common law tort of fraudulent misrepresentation. Id. at 148.  But we explained that the "mere receipt of a misleading statement, or even confusion, without any further consequence" is not the traditionally recognized harm providing a basis for fraudulent misrepresentation in American courts. Id.  "[C]onfusion, without more, is not a concrete injury." Id. at 149.  Rather, "to analogize to the tort of fraudulent

misrepresentation, a § 1692e claimant must suffer some cognizable harm that flows from that confusion." Id. An FDCPA plaintiff must identify "a consequential action or inaction following receipt of a misleading or deceptive collection letter." Id. (quotation marks omitted). In other words, the plaintiffs must have relied upon the false, deceptive, or misleading statements contained in the letter to some consequence. See id. The "'mere risk' that plaintiffs who receive a misleading letter from a debt collector will suffer such a cognizable injury is 'too speculative to support Article III standing.'" Id. (quoting TransUnion, 141 S. Ct. at 2211-12). This Court held that the Huber named plaintiff had standing because she relied upon the misleading debt collection letter and incurred two financial consequences because of it: a consultation with her financial advisor about the collection letter at an additional cost and the failure to pay down her debts or do anything beyond that consultation. Id.

In contrast to the Huber named plaintiff, Morales lacks standing because she has only shown the "mere risk" of harm, which cannot support standing. Id. (quotation marks omitted). Under either the informational injury doctrine or traditional standing principles, Morales must plead facts showing that she suffered some adverse consequence or downstream consequence from her receipt of the allegedly false or misleading letter. TransUnion, 141 S. Ct. at 2214 ("An asserted informational injury that causes no adverse effects cannot satisfy Article III.") (quotation marks omitted); Huber, 84 F.4th at 149 (holding that a § 1692e claimant "must suffer some cognizable harm that flows from that confusion" to confer standing under traditional principles).

7

Morales has not pled any facts showing either that she relied upon Commonwealth's letter or that she suffered any consequence flowing from that reliance. Reading her complaint in the most favorable light, Morales has simply shown she received an allegedly misleading letter — nothing more. All the consequences she alleges are hypothetical and illusory. The "mere risk" of litigation unsupported by any facts showing that it is certainly impending cannot be a cognizable injury conferring standing. See Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be certainly impending to constitute injury in fact.") (quotation marks omitted); Sherwin-Williams Co. v. County of Delaware, 968 F.3d 264, 269-71 (3d Cir. 2020) (holding that a "supposedly imminent lawsuit" where the plaintiff had purported "affirmative defenses it could raise in response" was not a sufficient injury conferring standing). As pled, Morales did not suffer a concrete injury.

Morales's complaint is replete with "ifs" and "coulds" and "woulds." It is bereft of any factual allegations other than that she incurred a debt and received a misleading debt collection letter. Mere confusion and the speculative risk of a lawsuit are not enough to confer standing to an FDCPA plaintiff.

### III.

For the foregoing reasons, we will vacate the District Court's order dismissing Morales's complaint with prejudice for failure to state a claim. We will also remand for the District Court to decide whether to grant Morales leave to amend her complaint to

8

allow her to plead additional facts that show she has standing or dismiss without prejudice due to lack of jurisdiction.